**BROWN v. ROUTZAHN, Collector of Internal Revenue.**

No. 6086.

Circuit Court of Appeals, Sixth Circuit.

March 17, 1933.

Horace Andrews, of Cleveland, Ohio (Thomas F. Patton and Andrews & Belden, all of Cleveland, Ohio, on the brief), for appellant.

Wm. T. Sabine, of Washington, D. C. (Wilfred J. Mahon and John B. Osmun, both of Cleveland, Ohio, and C. M. Charest, of Washington, D. C., on the brief), for appellee.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

MOORMAN, Circuit Judge.

This is a suit to recover a tax of $116,-012.53 exacted from the estate of Harvey H. Brown under the provisions of section 402 (c) of the Revenue Act of 1921 (42 Stat. 278). The tax was assessed by including in the decedent's estate at the time of his death the value of one-third of the estate of his deceased wife, Elizabeth Brown. Upon the trial a jury was waived and the case submitted to the trial court, which made findings of fact and law upon which it rendered judgment dismissing the complaint.

Elizabeth Brown died in 1912. By item 2 of her will she gave to her husband one-third of all her property, real, personal, and mixed, of which she should die possessed. By the same item and by a codicil she gave to him for his natural life, or so long as he might

desire to occupy the same, the use of two houses, with their contents, in order to provide a suitable and convenient home for him and her children. By item 3 she devised and bequeathed all the residue of her estate to Harvey H. Brown, her son Fayette Brown, and a trust company of Cleveland, as trustees, with power to manage and control the same, and, after paying enumerated expenses, to pay the income therefrom to Harvey H. Brown during his life and after his death to her children until they respectively reached the age of thirty years, when the principal was to be distributed to them. Item 4 provided that all the provisions in her will made for the benefit of her husband were intended to be, and should be, in lieu of all dower or other interest in her property created or conferred by law.

The will and codicil were admitted to probate June 10, 1912, and on the following day letters testamentary were issued to the named executors. On December 28, 1912, Harvey Brown appeared in the probate court and elected to take under the provisions of the will. On August 18, 1913, the probate court formally approved the nominations of the testamentary trustees. Although the estate seems to have been ready for settlement at that time, or, indeed, earlier, the executors made no final settlement or distribution of it until April 12, 1920, nearly seven years after the qualification of the testamentary trustees. The reason for this, as stated by the appellant, was that, after consultation, he and his father determined that it would be inadvisable to turn the estate over to the trustees because the Guardian Savings & Trust Company would have to be consulted as to its management and would be entitled to be paid for its services.

On March 31, 1920, the executors filed in the proper probate court an application for an order of distribution of the estate "in kind." The application alleged that Harvey H. Brown had refused to accept the one-third of his wife's property bequeathed and devised to him by her will, and had filed with the executors his formal renunciation thereof, that he had reserved, however, the life estate in the residence properties and also his right to receive the income from the estate under the trust created by item 3 of the will. It further alleged that by reason of such renunciation all the property of the estate except the portions so reserved became a part of the residue devised and bequeathed to the testamentary trustees. Harvey H. Brown filed with and as a part of the application a writing signed by him and purporting to be a

renunciation of his right to one-third of the estate. On the hearing of the application, the court determined that, excepting the income from the principal and the right to the use of the residences, Brown had renounced all interest in and to the estate, and particularly the one-third part devised and bequeathed to him absolutely, and that by virtue thereof all assets held by the executors became a part of the residue of the estate and subject to the trust created by item 3 of the will. The court accordingly ordered that all of the properties held by the executors be distributed in kind to the testamentary trustees. Shortly thereafter the executors transferred the assets of the estate to the trustees and filed with the court a statement of the transfer as their account of distribution, which was approved. Harvey H. Brown, in his individual capacity, consented to the distribution, and joined also with the other trustees in receipting for the securities. On July 1, 1920, he executed quitclaim deeds to the North Point Realty Company to his one-third interest in the residence properties, for which properties the grantee issued 4,000 shares of its stock to the trustees of his wife's estate.

There were no debts against Elizabeth Brown's estate, and from the date of her death until the distribution thereof the executors paid the income therefrom to Harvey H. Brown. Mr. Brown was a man of large means, and in April of 1920 was 72 years of age. Some of his children and business associates testified that after the will was probated he stated at different times that he did not intend to accept the gift of one-third of his wife's property. Strictly construed, some of his statements, as detailed by the witnesses, indicate an intention not to accept the income from the estate. A daughter testified that he said to her he did not wish "to use my mother's property; that he wished that to come to the children intact as she had left it, and that he didn't need the use of it in any way. He wished it to come to us children." The testimony of other witnesses indicates that he expressed the purpose merely not to take the one-third portion of the estate.

The court found: (1) That the decedent owned and was entitled to the entire beneficial interest in and to one-third of his wife's estate from and after her death until the distribution thereof by her executors; (2) that the distribution of the estate in April of 1920 to which Brown in his personal capacity consented amounted under the circumstances to a transfer by him of his one-third interest in the estate to the testamentary trustees; and (3) that such transfer was made in contem-

plation of death within the meaning of section 402 (c) of the Revenue Act of 1921.

It is obvious that, unless Brown accepted the gift of one-third of the estate or became the owner of such interest therein prior to April of 1920 as was transferable within the meaning of the Revenue Act, there could be no transfer in contemplation of death. In holding that there was an acceptance, the court below adopted the view that the gifts under item 2 of the will were intended as an entirety, and that the acceptance of either the use of the Cleveland residence or the income arising from the one-third of the estate amounted to an acceptance of the principal. The court was also of opinion that, if separate gifts of one-third of the property and the use of the residence were intended, the acceptance of the income from the one-third constituted an acceptance of the principal and precluded renunciation. We think the court erred in these views.

██ Where a testator makes two separate and distinct gifts, one beneficial and the other burdensome, the donee may undoubtedly accept the beneficial gift and reject the other, but, where there is a single gift, including burdensome and beneficial properties as an aggregate, then, unless a contrary intention appears from the will, the donee cannot disclaim the burdensome gift and accept the beneficial one. Page on Wills, § 1233. There is nothing in the record in this case to indicate that the gift of one-third of the property was burdensome nor in our view that that gift and the gift of the right to use the Cleveland residence was a single gift. The testator first gave to her husband a one-third interest in all of her property, including the Cleveland residence. After concluding this gift, she then gave him in another provision the right to use the Cleveland residence for life. The latter was a separate and distinct gift, and we can perceive in the reason for it, as stated by the testator, no purpose or intention to make its acceptance or enjoyment dependent upon an acceptance of the other gift.

██ With this question aside, we may state certain propositions which are conceded or are too well established to admit of doubt. First, under the Ohio law the only effect of the formal election of the decedent to take under the will was to bar his right of curtesy; it was still open to him to accept or reject the gift. Section 10572, Ohio General Code; Carder v. Board of Com'rs of Fayette County, 16 Ohio St. 354, 357. Next, there is no law in Ohio limiting the time in which a donee

may reject or accept a testamentary gift. Further, the acceptance or renunciation need not be in writing, but may be effected by any deliberate and unequivocal act indicating the intention. 2 Page on Wills (2d Ed.) pp. 2059, 2060. It should also be said that the decedent could have owned or held a transferable interest in the one-third part of the estate without holding the legal title or having it in possession.

██ In the light of the above statements, the situation presented is, so far as we are informed, without precedent. The decedent was in possession of the estate from 1912 until it was transferred to the trustees in 1920. It was not, however, in his possession as donee, but as a coexecutor. Nevertheless, at any time within that period he could have taken the one-third or made a renunciation that would have estopped him from claiming it. He did neither. It may be conceded, too, we think, that, had he died at any time between 1912 and the date of the distribution, this property would have passed under a general devise in his will, or, leaving no will, would have passed under the laws of descent and distribution as a part of his estate. Armstrong v. Grandin, 39 Ohio St. 368; Whitehead's Estate, 268 Pa. 407, 112 A. 16. The presumption arising from the beneficial character of the gift would have required that result. Strom v. Wood, 100 Kan. 556, 164 P. 1100; Bradford v. Leake, 124 Tenn. 312, 137 S. W. 96, Ann. Cas. 1912D, 1140; Albany Hospital v. Albany Guardian Society, 214 N. Y. 435, 108 N. E. 812, Ann. Cas. 1916D, 1195. Superficially this would seem to fix a transferable interest in the donee as of the date of the distribution. On the other hand, however, the law of Ohio does not require a donee to accept or reject a gift within any specified time, and a rejection made at any time before distribution is valid. We thus have a situation where, had the decedent died within the period of administration, the property would have passed as a part of his estate, but, living, he had the right, at any time before distribution, to reject the gift. In the one case the presumption of acceptance would carry through; in the other, it would be rebutted by renunciation. The question is therefore narrowed to the inquiry as to whether the doing of an act which the donee had the right to do, the rejecting of the gift, was a transfer within the meaning of the statute taxing transfers in contemplation of death.

While it has been held that taxing statutes of this character concern themselves, not so much with title as with command over the

property (Saltonstall v. Saltonstall, 276 U. S. 260, 48 S. Ct. 225, 72 L. Ed. 565; Chase National Bank v. United States, 278 U. S. 327, 49 S. Ct. 126, 73 L. Ed. 405, 63 A. L. R. 388; Corliss v. Bowers, 281 U. S. 376, 378, 50 S. Ct. 336, 74 L. Ed. 916; Tyler v. United States, 281 U. S. 497, 503, 50 S. Ct. 356, 74 L. Ed. 991, 69 A. L. R. 758; Burnet v. Guggenheim, 53 S. Ct. 369, 77 L. Ed. ——, Feb. 6, 1933), we cannot think that within the scope of that purpose the statute here in question contemplates the taxing of the renunciation of testamentary gifts. Specifically stated, it is our view that, had Elizabeth Brown died in January of 1920, the renunciation here involved, made the following April, could not be held to be a transfer under the statute, even though it were made in contemplation of death. If in that case the renunciation would not be a transfer, neither is it here. The decedent never owned nor had control of the property as donee. All that he had was a right to accept. Coupled with this right was an equal right to reject. Either could be exercised so long as the estate was in administration. He did reject. The government had no fixed prior right such as a precedent judgment creditor might have had. Cf. Strom v. Wood, supra; Crumpler v. Barfield & Wilson Co., 114 Ga. 570, 40 S. E. 808; Schoonover v. Osborne, 193 Iowa, 474, 187 N. W. 20, 27 A. L. R. 465. Its right, as claimed, grew out of the act said to give rise to the tax liability, the exercise of an option. What it did was to collect a tax, not upon the transfer of an interest in property, but upon the exercise of a right to refuse a gift of property. This we think it had no right to do.

The judgment is reversed, and the cause remanded for a new trial.